WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hilda L. Solis, Secretary of Labor, United States Department of Labor,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Sonora Environmental, L.L.C., an Arizona Corporation; Lee Jolley, an individual; Sonora Environmental, L.L.C. 404(K) Profit Sharing Plan, an employee benefit plan,<br><br>　　　　　　Defendants. | CV 10-00675-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Default Judgment. (Doc. 30.) On May 24, 2012, this Court ordered Plaintiff to show cause for her failure to file a timely application for default judgment. (Doc. 29.) Plaintiff filed her declaration on June 1, 2012. (Doc. 31.) Upon review of Plaintiff's Motion and declaration, Plaintiff's Motion for Default Judgment is granted.

## BACKGROUND

On November 15, 2010, Hilda L. Solis, Secretary of Labor filed an action alleging Defendants failed to manage Sonora Environmental's 401(k) Profit Sharing Plan within the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Complaint, Doc. 1.) The Complaint names as Defendants Sonora Environmental, LLC

1  ("Sonora"), Lee Jolley - President and Owner of Sonora, and Sonora's 401(k) Profit Sharing
2  Plan ("the Plan"). (*Id*. ¶¶ 5-7.)

### Factual Allegations[1]

The Complaint alleges the following facts: The Plan is an employee benefit plan within the meaning of ERISA. (Complaint, Doc. 1, ¶ 4.) The Plan was established January 1, 2005 by Sonora. (*Id*. ¶ 10.) Sonora was the Plan Sponsor, Named Fiduciary, and Plan Administrator of the Plan. (*Id*. ¶ 5.) Jolley was and is the President and owner of Sonora; he was and is the Named Fiduciary and Plan Trustee of the 401(k) Plan; he exercised discretionary authority and control with respect to the management and disposition of the Plan's assets; and he exercised discretionary authority and responsibility in the administration of the Plan. (*Id*. ¶ 6.) Sonora and Jolley are fiduciaries within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and they are parties in interest of the Plan within the meaning of ERISA §§ 3(14)(A),(E) and (H), 29 U.S.C. §§ 1002(14)(A), (E) and (H). (*Id*. ¶¶ 5-6.)

Sonora and Jolley, acting in fiduciary capacities, permitted the assets of the Plan to inure to the benefit of Sonora, in violation of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1). (*Id*. ¶ 22(a).) Between January 2005 and October 2008, Defendants failed to timely remit approximately $38,000 of employees' pay for salary reduction contributions and loan payments to the 401(k) Plan in accordance with the Plan's governing documents and 29 C.F.R. § 2510.3-102(a).[2] (*Id*. ¶ 15.) From October 28, 2005 to October 2008, Defendants

---

[1] The Court may take as true all factual allegations in Plaintiff's Complaint except those related to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987). The Court may also take into consideration later provided evidence in the form of affidavits and exhibits. *Id.*

[2] As explained in Christine Vu's Amended Declaration, by failing to timely remit the employees' contributions to the 401(K) Plan, Defendants engaged in a prohibited extension of credit in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B). (Doc. 35, ¶¶ 4(m); 4(o); and n. 1.) Defendants retained and commingled the employees' 401(K) contributions with Sonora's accounts, which provided Sonora with an extension of credit at an interest rate that Defendants would likely not have been able to obtain through a commercial loan. (*Id*. at 4(o).)

- 2 -

1  caused Sonora to withhold at least $2,000 from employees' pay for salary reduction
2  contributions and loan payments to the 401(k) Plan, but Defendants failed to remit the
3  amounts withheld into the 401(k) Plan's account. (*Id.* ¶ 17.)

4  Sonora and Jolley also violated various fiduciary duties by failing to diligently
5  administer the Plan to the benefit of the employees. Defendants failed to file Annual Report
6  Forms 5500 pursuant to ERISA § 104 and failed to secure a fidelity bond as required by
7  ERISA § 412. (*Id.* ¶ 19.) Defendants failed to provide for the prudent and complete
8  termination of the Plan, including determining whether participants received proper notice
9  of the Plan distributions to which they are entitled. (*Id.* ¶ 21.)[3] Defendants' failure to remit
10 at least $2,000 of employee contributions and loan payments to the 401(K) Plan and
11 Defendants' commingling of the funds with Sonora's accounts violated ERISA §
12 406(a)(1)(B) and (D), 29 U.S.C. § 1106(a)(1)(B) and (D). (*Id.* ¶ 17.) By failing to remit
13 employee contributions and commingling of Plan assets with Sonora's accounts, Defendants
14 also failed to act solely in the interest of the participants and beneficiaries of the Plan, and
15 for the exclusive purpose of providing benefits to participants and their beneficiaries, and
16 defraying reasonable expenses of 401(k) Plan administration, in violation of ERISA §
17 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). (*Id.* ¶ 22(b).) Defendants failed to act with the
18 care, skill, prudence and diligence under the circumstances then prevailing that a prudent
19 person acting in like capacity and familiar with such matters would exercise, in violation of
20 ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). (*Id.* ¶ 22(c).)

21 As a direct and proximate result of Sonora and Jolley's breach of fiduciary duties, the
22 Plan has suffered losses, including lost-opportunity income. (*Id.* ¶ 24.)

**Procedural Background**

24 On May 29, 2009, before this action was commenced, the Employee Benefits Security
25 Administration ("EBSA") sent a notice letter to Jolley, citing him for various ERISA

---

[3]Sonora Environmental ceased operations in October of 2008. (Doc. 35, ¶ 4(j).)

- 3 -

1 violations. (Doc. 30-1, ¶ 4(m).)[4] Jolley confirmed receipt of the letter, but he failed to take
2 any corrective action regarding the violations. (*Id*.)

3 On November 18, 2010, the Secretary sent waiver of service of summons forms to all
4 Defendants. (Declaration of Donna F. Bond, Doc. 30-2, ¶ 4.) On December 14, 2010,
5 Defendant Jolley waived service as an individual and for the Plan. (Docs. 8 & 9.) On
6 January 14, 2011, Jolley waived service on behalf of Sonora. (Doc. 11.)

7 On January 18, 2011, Jolley filed an Answer on behalf of himself and Sonora. (Doc.
8 13.) The Court set a scheduling conference (doc. 14) and ordered that Sonora and the Plan
9 retain counsel before the scheduling conference on May 10, 2011, because Jolley, appearing
10 *pro per*, could not represent the corporate defendants. (Doc. 15.) Defendants failed to
11 appear at the scheduling conference. (Doc. 25.) The Court set another scheduling
12 conference and warned that if no action was taken with regard to the unrepresented
13 defendants, those defendants would be dismissed. (Doc. 17.) Defendants again failed to
14 appear. (Doc. 23.) The Secretary applied for entry of default against Sonora and the Plan.
15 (Doc. 18.) On December 15, 2011, the Clerk of the Court entered default against Sonora and
16 the Plan. (Doc. 22.)

17 On January 4, 2012, the Court filed an order to show cause, noting that despite
18 answering the Complaint and contacting Magistrate Judge Marshall's chambers, Jolley had
19 failed to defend the matter. (Doc. 23.) On February 10, 2012, the Magistrate Judge
20 recommended that the District Court enter default against Jolley. (Doc. 25.) On March 15,
21 2012, this Court adopted the Magistrate Judge's Report and Recommendation (doc. 26), and
22 the Clerk of the Court entered default against Jolley. (Doc. 27.)

23 The Secretary now brings her Motion for Default Judgment, requesting that the Court
24 enter judgment in her favor and award damages and equitable relief against Defendants.
25 //

26

27
28     [4]Declaration of Christine Vu, Senior Investigator of the United States Department of Labor, Employee Benefits Security Administration.

- 4 -

**DISCUSSION**

**I. Default Judgment**

After entry of a default, a court may, in its discretion, grant a default judgment on the merits of the case.[5] *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the Court considers:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon consideration of the *Eitel* factors, the Court concludes that entering default judgment against Defendants Sonora and Jolley is proper.

**A. The possibility of prejudice to Plaintiff**

The Court first considers whether the Secretary will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. Defendants failed to remit $2,078.46 in employee contributions and participant loan payments to the Plan and instead, retained and commingled those contributions and payments with Sonora's accounts. Defendants also failed to timely remit $38,314.03 of employee contributions and participant loan payments to the Plan, which constituted a prohibited extension of credit. Jolley was provided an opportunity to remedy the ERISA violations without judicial intervention, but he failed to take any corrective action regarding the violations. The Court concludes that the Secretary would suffer prejudice if her motion for default judgment was denied because she would be "without other recourse for recovery." *PepsiCo, Inc. v. California Security Cans,* 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).

---

[5]The entry of default by the Clerk is a necessary "prerequisite to an entry of default judgment." *Vongrabe v. Spint PCS*, 312 F.Supp.2d 1313, 1318 (S.D.Cal.2004). Here, the Clerk has properly entered default against Defendants. (Docs. 18 & 27.)

- 5 -

### B. Merits of the substantive claims and sufficiency of the Complaint

*Eitel* "require[s] that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris U.S.A., Inc. v. Castworld Products, Inc.,* 219 F.R.D. 494, 499 (C.D. Cal. 2003) (internal quotation marks omitted). The Secretary alleges that Sonora and Jolley, acting in their roles as fiduciaries: (1) permitted the assets of the Plan to inure to the benefit of Sonora; (2) failed to act solely in the interest of the participants and beneficiaries of the Plan; (3) failed to act with care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of a like character; and (4) inappropriately managed the employees' contributions to their own benefit. (Complaint, Doc. 1, ¶ 22.) Given these allegations and the Court's acceptance of these allegations as true, the Court finds that the Secretary has adequately shown that Defendants violated ERISA. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

### C. Sum at stake

This factor requires the Court to consider the amount of money at stake in relation to the seriousness of the defendants' conduct. *Eitel*, 782 F.2d at 1471-72. In this case, the damage award sought by the Secretary is the payment of $2,078.46, which Defendants failed to remit to the 401(k) Plan (doc. 30-1, ¶ 4(i)), and $1,197.86 in lost earnings calculated through March 15, 2012. (*Id.* ¶ 4(k).) The Secretary also seeks post-judgment interest. As will be discussed in Section II, the Secretary's requested relief is appropriate in light of Defendants' abrogation of their fiduciary duties. This factor weighs in favor of default judgment.

### D. Possible dispute concerning material facts

The Court next considers the likelihood of a dispute concerning material facts. *Eitel*, 782 F.2d at 1471-72. Here, Jolley denied many of the Secretary's allegations in his Answer. (*See* doc. 13.) For example, Jolley asserts that "every reasonable effort was made to remedy the reimbursement of all contributions to all participants." (Answer, Doc. 13, ¶ 25.) Although Jolley's Answer raises a possibility of dispute concerning material facts, the Court

- 6 -

finds that Defendants' specific ERISA violations were identified; Jolley was given the opportunity to remedy the violations; and he took no action. Jolley's conclusory responses in his Answer - that he made "every reasonable effort" to remedy his ERISA violations - are directly undermined by his interactions with the EBSA. Moreover, the Court finds that the Secretary's Complaint and declarations in support of default judgment demonstrate Defendants' failure to administer the Plan within the parameters of ERISA. *See TeleVideo Sys., Inc.*, 826 F.2d at 917. Therefore, this factor weighs in favor of entering default judgment.

### E. Excusable neglect

Under this factor, the Court evaluates whether the failure to answer or defend is due to excusable neglect. *See Eitel,* 782 F.2d at 1472 (noting that the fact that the parties were engaged in settlement negotiations excused defendant from failing to answer). In the instant case, Defendants were properly served; Jolley waived service as an individual, for the Plan and for Sonora; Jolley filed an Answer on behalf of himself and Sonora; and Jolley contacted Magistrate Judge Marshall's chambers. The Court finds that Defendants were well-apprised of this case and choose to abandon a defense. Given these circumstances, it is unlikely that Defendants' failure to defend this matter was the result of excusable neglect.

### F. Policy considerations

Generally, default judgments are disfavored because "cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, because a discretionary standard is applied, "default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc*., 189 F.R.D. 431, 432 (C.D. Cal. 1999). Indeed, the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not dispositive. *California Security Cans*, 238 F.Supp.2d at 1177. Defendants' failure to defend this matter makes a decision on the merits impractical, if not impossible. Therefore, the policy encouraging decisions of cases on their merits does not weigh against granting default judgment in this case.

## II. Damages & Equitable Relief

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Because the allegations in the complaint are taken as true, "[i]njury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Black & Decker (U.S.), Inc. v. All Spares, Inc.*, 2010 WL 3034887, *3 (D. Ariz. Aug.3, 2010) (citing *Philip Morris USA, Inc. v. Castworld Products, Inc*., 219 F.R.D. 494, 498 (C.D. Cal. 2003). While the Court is not required to issue findings of fact as to liability, it must do so as to damages. *Adriana Int'l. Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990). The Court finds that the Secretary's requested relief naturally arises out of Defendants' failure to manage the 401(k) Plan within the parameters of ERISA, and therefore damages and equitable relief are appropriate.

### A. Direct damages

The Secretary seeks damages of $2,078.46 for Defendants' failure to remit this amount to the 401(k) Plan. (Doc. 30-1, ¶ 4(i).) The Secretary arrived at this figure by calculating the total amount of funds withheld from employees' pay for salary reduction contributions from January 7, 2005 to October 30, 2008, and subtracting the total amount of funds deposited into the 401(k) Plan. (*See* Doc 30-3.) Defendants' failure to remit $2,078.46 to the 401(k) Plan is recoverable.

### B. Pre and post-judgment interest

It is within the Court's discretion to award pre-judgment interest on an ERISA judgment. *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 627-28 (9th Cir. 2007). "Generally, 'the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.'" *Id*. at 628 (quoting *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir. 2001)) (citation omitted).

1    In this case, the Secretary requests pre-judgment interest, which she determines to be
2 $1,197.86 through March 15, 2012. (Doc. 30-1, ¶ 4(k).) The Secretary arrived at this figure
3 by "calculat[ing] the lost earnings on the unremitted and untimely remitted employee
4 contributions and participant loan payments using the higher of the Plan's rate of return and
5 IRC section 6621(a)(2), 26 U.S.C. § 6621(a)(2), underpayment rate ("IRC Rate")." (*Id.*) The
6 IRC Rate is 3%, whereas the interest rate prescribed by 28 U.S.C. § 1961 is, as of July 27,
7 2012, 0.17%. (Doc. 35, ¶ 4(p).) The Secretary asserts that the higher interest rate prescribed
8 by the IRC Rate should be utilized because the interest rate provided by § 1961 was 2.82%
9 in January 2005 and had risen to 4.36% in December of 2005. (*Id.*) The Plan came into
10 effect on January 1, 2005. (Complaint, Doc. 1, ¶ 10.) The § 1961 interest rate has decreased
11 approximately 3% since 2005. (Doc. 35, ¶ 4(p).)

12    Further, the Secretary notes that the EBSA administers a program called Voluntary
13 Fiduciary Correction Program ("VFCP"), which is designed to encourage the voluntary
14 correction of fiduciary violations. (*Id.* ¶ 4(q).) The VFCP "sets forth the appropriate rate of
15 return a fiduciary must use when voluntarily calculating the lost earnings on unremitted and
16 untimely remitted employee contributions and participant loan payments. (*Id.*) The VFCP
17 utilizes the IRC Rate "to provide simplicity and uniformity in correction amount
18 calculations." (*Id.*) The Secretary asserts that calculating lost earnings using the lower rate
19 specified in § 1961 would place an uncooperating, defaulting fiduciary, like Defendants, in
20 a better financial position than a fiduciary who voluntarily corrected the same breaches.
21 (Doc. 35, ¶ 7.) It would also have the effect of encouraging fiduciaries, like Defendants, to
22 take prohibited loans from their employee benefit plans due to the significantly lower interest
23 rate. (*Id.*) The Court agrees, and finds that substantial evidence exists for deviating from the
24 interest rate in § 1961 and adopting the higher interest rate prescribed by the IRC Rate. The
25 Court will also order that prejudgment interest be paid at the interest rate prescribed by the
26 IRC from March 16, 2012 to the day this Order is filed.

27    The Secretary also requests post-judgment interest pursuant to 26 U.S.C. § 6621. The
28 Court finds that post-judgment interest should be awarded from the date of the entry of

- 9 -

judgment through the date of collection. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (holding that federal post-judgment interest statute, 28 U.S.C. § 1961, is applicable in ERISA cases). Section 1132(g)(2), 29 U.S.C., allows for a fiduciary acting on behalf of a plan to enforce § 1145[6] to recover interest on unpaid contributions; "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2)(E). Here, the Secretary, acting on behalf of Sonora's employees, may recover interest on Defendants' unpaid contributions to the 401(K) Plan at the rate prescribed by 26 U.S.C. § 6621.

### C. Equitable Relief

The Secretary requests that the Court remove Defendants as fiduciaries of the Plan, permanently enjoin Jolley from administering an ERISA plan in a fiduciary capacity, and appoint an independent fiduciary to administer to the Plan. The Court finds that the equitable relief requested by the Secretary is appropriate.

ERISA § 409(a) provides that breaching fiduciaries "shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). In the event of a breach of a fiduciary duty, ERISA grants the district court "broad authority to fashion remedies for redressing the interests of participants and beneficiaries." *Donovan v. Mazzola*, 716 F.2d 1226, 1235 (9th Cir. 1983). In fact, courts "have a duty 'to enforce the remedy which is most advantageous to the participants and most conducive to effectuating the purposes of the trust.'" *Id.* (quoting *Eaves v. Penn*, 587 F.2d 453, 462 (10th Cir. 1978)).

#### 1. The Court will remove Defendants as fiduciaries of the Plan.

The Court finds that removal of Sonora Environmental and Jolley as fiduciaries of the Plan is proper. ERISA expressly provides for the removal of a fiduciary who breaches any of the responsibilities, obligations, or duties imposed upon the fiduciary. 29 U.S.C. §

---

[6]Section 1145, 29 U.S.C., mandates that an employer who is obligated to make contributions under the terms of an ERISA plan do so in accordance with the terms and conditions of such a plan.

- 10 -

1109(a). Given the ERISA violations, discussed herein, Defendants are removed as fiduciaries of the Plan.

### 2. The Court will permanently enjoin Jolley from administering an ERISA plan in the future.

The Court will permanently enjoin Jolley from providing any services - whether as a fiduciary or otherwise - directly or indirectly to any ERISA-covered plan. While the Ninth Circuit has not addressed the propriety of permanently enjoining a former ERISA plan fiduciary from administering an ERISA plan in the future, federal courts have permitted permanent injunctions where appropriate. *See Solis v. Couturier*, 2009 WL 1748724, \*7 and n. 36 (E.D. Cal. June 19, 2009) (ERISA permits the Secretary to obtain a permanent injunction to prevent a fiduciary from managing an ERISA plan in the future); *Reich v. Lancaster*, 55 F.3d 1034, 1054 (5th Cir. 1995) (affirming district court's permanent injunction enjoining ERISA plan fiduciaries from administering ERISA plans in the future because they received unreasonable compensation without disclosing their charged premiums to beneficiaries); *Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991) ("ERISA imposes a high standard on fiduciaries, and serious misconduct that violates statutory obligations is sufficient grounds for a permanent injunction"); *Chao v. Malkani*, 216 F.Supp.2d 505, 518 (D. Md. 2002), *aff'd* 452 F.3d 290 (4th Cir. 2006) (various violations of fiduciary duties justified permanently enjoining plan fiduciaries from administering an ERISA plan in the future).

In this case, the Court concludes that Defendants' failure to timely remit the employees' contributions to the Plan, Defendants' retention and commingling of funds with Sonora's assets, Defendants' failure to terminate the Plan after Sonora ceased operations, and Defendants' failure to administer the Plan as required by ERISA constitutes ample cause to permanently enjoin Jolley from providing any services to any ERISA-covered plan. *See* 29 U.S.C. § 1109(a).

**3. The Court will appoint an independent fiduciary.**

The Court finds that it is appropriate to appoint an independent fiduciary to distribute the remaining assets of the 401(K) Plan and terminate the Plan. A district court may appoint an independent fiduciary to administer to the plan's assets where the former fiduciary has breached his obligations. *See Donovan*, 716 F.2d at 1236-39 (affirming district court's appointment of a new investment manager for the fund based on fiduciary's violations of 29 U.S.C. § 1106). Sonora Environmental ceased operations in October of 2008. (Doc. 35, ¶ 4(j).) As of February 2010, the Plan held assets of $9,834.45, not including the Plan assets that this suit was brought to recover. (Doc. 30-1, ¶ 4(p).) Based on Defendants' failure to act as a reasonable and prudent fiduciary and the Plan's existing assets, the Court concludes that appointment of an independent fiduciary is necessary to effectuate the purposes of the Plan and is most advantageous to the beneficiaries.

The Court further finds that the costs associated with appointing an independent fiduciary and administering the termination of the Plan are appropriately allocated to Defendants. *See Donovan*, 716 F.2d at 1235.

Accordingly, **IT IS ORDERED** as follows:

1. The Secretary's Motion for Default Judgment (Doc. 30) is GRANTED;

2. Defendants Sonora and Jolley are jointly and severally liable to restore to the Plan the sum of $3,276.32, which includes $2,078.46 in losses and $1,197.86 in prejudgment interest/lost-opportunity costs calculated through March 15, 2012, and Defendants are ordered to immediately remit said amount to the Plan;

3. Defendants Sonora and Jolley are jointly and severally liable for additional prejudgment interest in an amount to be determined using the IRC Rate of 3% for the time period beginning March 16, 2012 through October 24, 2012;

4. Post-judgment interest shall accrue on the identified debt at the rate set forth in 26 U.S.C. § 6621 from the date this Court enters an order in the Secretary's favor until such time as the debt is paid to the Plan in full;

5. Defendants Sonora and Jolley are removed as fiduciaries to the Plan;

1    6. Alpha & Omega, Inc. 8580 La Mesa Blvd., Suite #100, La Mesa, CA 91942 is appointed as the Independent Fiduciary to the Plan and:

   a. the Independent Fiduciary shall collect, marshal, pay out and administer all of the Plan's assets and take further action with respect to the Plan as appropriate, including amending the Plan and terminating the Plan when all of its assets have been distributed to all eligible participants and beneficiaries;

   b. the Independent Fiduciary shall, pursuant to the procedures outlined in the Employee Benefits Security Administration's Field Assistance Bulletin 2004-02, exercise reasonable care and diligence to identify and locate each Plan participant and beneficiary who is eligible to receive a distribution under the terms of the Plan;

   c. the Independent Fiduciary shall have all the rights, duties, discretion, and responsibilities of a trustee, fiduciary, and Plan Administrator under ERISA and is ordered to file a final Internal Revenue Service Form 5500 for the Plan;

   d. the Independent Fiduciary is authorized to delegate or assign fiduciary duties as appropriate and allowed under the law and may retain such assistance as it may require, including attorneys, accountants, actuaries, and other service providers;

   e. the Independent Fiduciary shall have full access to all data, information, and calculations in the Plan's possession and under its control, including information and records maintained by the Plan's custodial trustee or service provider and shall provide any such information to the Secretary upon request;

   f. the Independent Fiduciary is authorized to give instructions respecting the disposition of assets of the Plan; and

   g. the Independent Fiduciary shall comply with all applicable rules and laws.

7. In no event shall any losses restored pursuant to this Order be allocated or otherwise paid to Defendant Jolley;

8. Defendants Sonora and Jolley are jointly and severally liable to pay, and shall immediately pay, the Independent Fiduciary his reasonable fees in the amount of up to

$1,200.00 to administer the Plan, conduct an accounting, and terminate and distribute the assets of the Plan to non-breaching fiduciary participants and beneficiaries;

    9. To the extent that Defendants Sonora and/or Jolley fail to pay the Independent Fiduciary the amount of his reasonable fees in the amount of up to $1,200.00 within **twenty (20) days** of the entry of this judgment, such amount shall be entered as a judgment against Defendants Sonora and Jolley and post-judgment interest be awarded from the date of judgment through the date of collection pursuant to 28 U.S.C. § 1961;

    10. To the extent that Defendants Sonora and/or Jolley fail to pay the Independent Fiduciary as required ordered, the Plan shall be authorized to advance payment of reasonable expenses and fees in the amount of up to $1,200.00 to the Independent Fiduciary;

    11. Defendant Jolley shall be permanently enjoined from serving as a fiduciary or service provider to any ERISA-covered employee benefit plan;

    12. Defendants Sonora and Jolley shall be permanently enjoined from violating the provisions of Title I of ERISA;

    13. The parties shall bear their own costs, expenses, and attorneys' fees incurred in connection with any stage of the above-referenced proceeding to date, including but not limited to, attorneys' fees which may be available under the Equal Access to Justice Act, as amended; and

    14. Nothing in this Order shall affect the Secretary's ability to assess a penalty pursuant to Section 502(l) of ERISA, 29 U.S.C. § 1132(l).

    Dated this 24th day of October, 2012.

_____
Jennifer G. Zipps
United States District Judge